ELBERT COKER, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

## Opinion Filed May 22, 1922.

1. Where an indictment found in D. County charges that a crime was committed in that county, and the portion of D. County in which the crime is alleged to have been committed is afterwards made a part of H. County, and pursuant to the statute creating H. County out of a portion of D. County, the indictment is duly sent to H. County, trial on the indictment may be had in H. County by a Judge duly assigned to act in the place of the resident Judge, and the organic provision that the "accused shall have the right to a *   *   *   trial *   *   *   in the county where the crime was committed" is not thereby violated.

2. Where a plea in abatement to an indictment has been sustained, a demurrer to a plea in abatement to a subsequent indictment setting up that the court charged the grand jury "to re-investigate the case of the State of Florida against" the defendant was properly sustained.

3. Upon a prosecution for rape alleged to have been committed "forcibly and against the will of" the prosecuting witness, reasonable latitude should be allowed in adducing evidence to test the probative force of the testimony of the prosecutrix as to the nature and extent of the force used and as to whether consent was or was not ultimately yielded, since the accomplishment of the act by force and against the will of the female are the essential elements in the crime, and where no other person was an immediate witness to the act, the testimony of the prosecutrix should be rigidly scrutinized to avoid an unmerited conviction for a capital offense.

4. Upon a full consideration of the entire record in this case it appears that a new trial on the essential facts constituting the capital offense charged, will best subserve the ends of justice.

A Writ of Error to the Circuit Court for Hardee County; M. F. Horne, Judge.

*W. D. Bell,* for Plaintiff in Error;

*Rivers H. Buford,* Attorney General, and *J. B. Gaines.* Assistant, for the State.

WHITFIELD, J.—The indictment herein filed in DeSoto County, December 20, 1920, charges "that Elbert Coker, on the 5th day of September, in the year of our Lord One Thousand Nine Hundred and Twenty, at and in the County of DeSoto aforesaid, with force and arms in and upon one Lessie Boyette, a female, did make an assault, and her, the said Lessie Boyette, then and there feloniously did ravish and carnally know, forcibly and against the will of her the said Lessie Boyette, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Florida."

A former judgment of conviction under the indictment was reversed for errors of procedure. Coker v. State, 82 Fla. 5, 89 South. Rep. 222.

On a subsequent trial the defendant was found "guilty of rape as charged and recommended to the full mercy of the court." To a judgment imposing a sentence to life imprisonment the defendant took a writ of error.

By Chapter 8513, Laws of Florida, approved April 23, 1921, the County of DeSoto was divided into five counties, *viz*: Hardee County, Highlands County, Glades County, Charlotte County and DeSoto County. All of the said counties were made, as the entire County of Desoto had been, a part of the Twelfth Judicial Circuit. The statute also provides:

22—Vol. 83.

"The courts of each of said counties shall have civil and criminal jurisdiction throughout said county over causes of action which shall have accrued, and over crimes and misdemeanors which shall have been committed within the territory embraced in each of said counties as hereby constituted, prior to this Act going into effect, in the same manner and to the same extent as if said county had been in existence when such causes of action accrued or such crimes or misdemeanors were committed." Sec. 11.

"All actions, suits and prosecutions, and all proceedings in guardianship or administration, and all other actions, suits, prosecutions or proceedings that may be pending in DeSoto County in any court or before any officer or board of said county, upon this Act going into effect whereof any court, officer or board of any one of said new counties would have had jurisdiction if said county had been in existence when such action or proceedings were instituted, shall be transferred to the court, officer or board of such new county having jurisdiction of such matters, and all pleadings, papers and documents in any way pertaining to any such action, prosecution or proceeding, shall be delivered by the clerk or other officer, court or board of DeSoto County having custody thereof, to the proper officer, court or board of such new county." Sec. 12.

By executive order dated August 24, 1921, the Judge of the Third Judicial Circuit was designated to preside in the trial of this cause to be held in Hardee County, and on August 26, 1921, the said judge presiding ordered "that the clerk file all papers, motions, pleas in this cause *nunc pro tunc.*"

It appears by the transcript that the following endorsement was made upon the indictment by the Clerk of the Circuit Court for Hardee County: "By order of the

Judge *Pro Haec Vice* this paper is filed Aug. 26, 1921, as of 16th day of Aug., 1921, on which date this paper was received from A. L. Durrance, Clerk of the Circuit Court of DeSoto County, Florida.'' The papers in the cause having been received on August 16, 1921, by the Clerk of the Circuit Court for Hardee County from the Clerk of the Circuit Court for DeSoto County, pursuant to Sections 11 and 12, Chapter 8513, Acts of 1921, the cause was pending in the Circuit Court for Hardee County when the executive order of August 24, 1921, designated the Judge of the Third Judicial Circuit to preside at the trial of the cause, and the order made August 26, 1921, that the papers, etc., in the cause be filed *nunc pro tunc* as of the day on which they were duly received by the Clerk of the Circuit Court for Hardee County, was appropriate, the court under the Constitution, and the judge presiding by executive designation, having jurisdiction in the premises. See Johnson v. State, 58 Fla. 68, 50 South. Rep. 529; Ammons v. State, 9 Fla. 530.

The Constitution provides that ''In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury, in the county where the crime was committed.'' Sec. 11, Declaration of Rights. When this indictment was found the place where the crime was alleged to have been committed was in a subdivision of the State then called DeSoto County, and the indictment properly alleged the commission of the crime to have been in DeSoto County. When the county was subsequently divided, the statute properly directed a transfer of causes then pending to the proper court in the county covering the territory in which the cause arose, thus making effective the constitutional provision that the accused has a right to be tried ''in the county where the crime was

committed.'' This is not a transfer at the instance of the State of a criminal prosecution from a county where the alleged crime was committed to another county in which the crime was not committed, as in O'Berry v. State, 47 Fla. 75, 36 South. Rep. 440, and Ashley v. State, 72 Fla. 137, 72 South. Rep. 647.

The provision of the statute that the courts of each of the newly created counties shall have jurisdiction over crimes *which shall have been committed* within the territory embraced'' therein *''in the same manner * * ** as if said county had been in existence when * ** such crimes were committed,'' does not invalidate an indictment found in DeSoto County before its division for a crime committed in the portion of the old county that is subsequently embraced in the county called Hardee; but under the constitution and the statute, upon a due transfer of the papers in the cause to Hardee County, trial may there be had in order that the accused may be accorded his right to be tried ''in the county where the crime was committed'' as guaranteed by the Constitution. Though the indictment alleges the crime was committed in DeSoto County, the statute by directing a transfer of the papers in the cause, preserves the right of the defendant as to the venue of the trial, which is the substance of the organic right, the name of the county under the circumstances not being of controlling import. Should it develop that the alleged crime was in fact not committed in the part of old DeSoto County now called Hardee County, the trial court would of course take appropriate action to preserve the rights of the defendant and to effectuate applicable law.

The indictment is not repugnant in itself and the allegation of the indictment that the crime was committed in

DeSoto County does not preclude a trial in Hardee County in view of the subsequent statute creating Hardee County out of a portion of DeSoto County, there being no plea that the alleged crime was not in fact committed in the territory now constituting Hardee County. The plea to the jurisdiction of the court over the cause, set up no fact showing a want of jurisdiction and it was properly eliminated by demurrer.

The defendant filed the following plea in abatement:

"Now comes Elbert Coker in his own proper person, all the proceedings heretofore had and taken in said cause having been declared null and void by the Supreme Court of the State of Florida, and enters this his plea in abatement to the indictment herein pending and says: That the State of Florida ought not to further prosecute him upon said indictment because same is illegal in this, to-wit: The name of the defendant and the case of the State of Florida against Elbert Coker was specifically stated in the order of the court reconvening the said grand jury to the session at which they found the indictment now pending against him. The said order is in the words and figures following, to-wit:

"IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF FLORIDA.

"IN AND FOR DESOTO COUNTY, FALL TERM, A. D. 1920.

"The defendant in the case of State of Florida against Elbert Coker, having filed a plea in abatement in said cause, wherein it is said that one of the grand jurors of the grand jury empanelled and sworn at this term of court was under prosecution for crime at the time of the finding of such indictment, and that the name of said grand

juror is Robert I. Harris, and it appearing to the court that said indictment was returned by said grand jury. The said grand jury having been dismissed and the said plea having been sustained and it further appearing that the said term has not been adjourned without day, it is therefore ordered that the said grand jury and each member thereof except the said Robert I. Harris be reconvened in open court on Monday the 20th of December, 1920, at ten o'clock A. M. for the dispatch of any business that may come before said grand jury and that the sheriff do summon each member except said Robert I. Harris, pursuant to this order.

"Done and ordered in open court, this 18th day of December, 1920.

George W. Whitehurst,
Judge of the Circuit Court.

"And when the said grand jury were reconvened the said judge who was then presiding specifically directed the attention of the grand jury to Elbert Coker, the defendant herein, and specifically referred to the case of the State of Florida against Elbert Coker. A recital of the said charge from the minutes of the court is in words and figures as follows, to-wit:

"Monday morning, December 20th, A. D. 1920.

"Court convened according to adjournment, Judge George W. Whitehurst being present and presiding, the following business was transacted, to-wit:

"The grand jury having been recalled and the following grand jurors answered to roll call: J. Q. Adams, D. S. Williams, M. D. Carlton, E. L. Martin, Julius Clark, B. B. Smith, J. C. Waltmire, W. B. Zachary, Frank Alder-

man, J. B. Sellman, H. M. Alexander, G. T. Bragdon, Jack Keen, A. A. Coup, W. E. Long, G. M. Collier, R. F. Saxon.

''The court charged the grand jury to re-investigate the case of the State of Florida against Elbert Coker, and further charge the said grand jury that at least twelve of their number must assent to the finding of an indictment before they could return an indictment against the defendant, and investigate such other matters as should be called to their attention. And thereupon the said grand jury, composed of the following: J. Q. Adams, D. S. Williams, M. D. Carlton, E. L. Martin, Julius Clark, B. B. Smith, J. C. Waltmire, W. B. Zachary, Frank Alderman, J. B. Sellman, H. M. Alexander, G. T. Bragdon, Jack Keen, A. C. Coup, W. E. Long, G. M. Collier and R. F. Saxon, the same being all of the grand jury empanelled and sworn on the first day of this Fall Term with the exception of Robert I. Harris, who as it appears to the court, is disqualified to act as a grand juror at this term. Thereupon the said grand jury retired to their room and afterwards, to-wit: On the same day returned into open court in due form the following indictments:

STATE OF FLORIDA,
            vs.            —Rape.
ELBERT COKER.

''Wherefore, the defendant says that said judge did express to the said grand jury an opinion that there was such a case pending as that of the State of Florida against Elbert Coker and did direct attention of the grand jury specifically to Elbert Coker; and the defendant avers that such statements, expressions and opinions by the judge as aforesaid had undue influence upon the minds of the jury, prejudicial to the defendant; he, therefore, avers that the indictment found by the said grand jury is null and void

and prays the judgment of the court whether he should make any other or further answer or plea to same and that the same may be quashed.''

Motions to amend and also to strike portions of the plea were made. It does not clearly appear by the transcript how the plea was amended or what was the effect of the motion granted to strike a portion of the plea in abatement. But assuming that the action of the court on the motion to strike and in sustaining a demurrer to the plea, in effect eliminated the plea in abatement from the case, error in doing so is not shown.

It does not appear from the plea that the court in charging the grand jury expressed an opinion as to the guilt of the accused. The reference to the case of State v. Elbert Coker was to indicate to the grand jury why they were ordered reconvened. Nothing appears in the plea that reasonably would have influenced the grand jury in re-indicting the accused.

Upon a prosecution for rape alleged to have been committed ''forcibly and against the will of'' the prosecuting witness, reasonable latitude should be allowed in adducing evidence to test the probative force of the testimony of the prosecutrix as to the nature and extent of the force used and as to whether consent was or was not ultimately yielded, since the accomplishment of the act by force and against the will of the female are the essential elements in the crime, and where no other person was an immediate witness to the act, the testimony of the prosecutrix should be rigidly scrutinized to avoid an unmerited conviction for a capital offense.

A discussion of the evidence will serve no useful purpose.

The prosecution in this case is not for a violation of Chapter 7732, Acts of 1918, Section 5409, Revised General

Statutes of 1920, but the capital crime of rape is charged under Section 3221, General Statutes of 1906, Section 5051, Revised General Statutes of 1920, and the testimony does not clearly show the defendant to be "guilty of rape as charged." The jury recommended the defendant "to the full mercy of the court," which apparently indicates that the jury regarded the evidence as not entirely convincing. Justice demands that the sentence to life imprisonment should be reversed for a new trial to more fully determine whether the offense was in fact committed forcibly and against the will of the prosecuting witness as alleged in the indictment.

Reversed.

BROWNE, C. J., AND TAYLOR, J., concur.

ELLIS AND WEST, J. J., dissent.

WEST, J.—Dissenting.

The court has decided in this case that there was no harmful error of procedure. The case has been twice tried by juries of the county in which the offense is alleged to have been committeed and in each trial there was a verdict of guilty. Upon motions for new trials these verdicts have received the approval of the trial judges who saw and heard the witnesses. Under our system the jury is the judge of the weight and credibility of the evidence. There is, in my opinion, sufficient proof in this case to sustain the verdict and, I, therefore, dissent from the conclusion reversing the judgment.

ELLIS, J., concurs in the above dissent.